UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CESAR TUCUBAL, Plaintiff, | : | |
| -against- | : | **No. 2:21 Civ. 5534 (DG) (CLP)** |
| AMBIKA BHAVANI INC. d/b/a SUPREME DINER and DALJIT K. SANGHU, Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

PECHMAN LAW GROUP PLLC
Louis Pechman
Galen C. Baynes
488 Madison Avenue, 17th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........ **1**

**STATEMENT OF FACTS** ........ **1**

**ARGUMENT** ........ **2**

I. LEGAL STANDARD ........ 2

II. THE DISCRETIONARY FACTORS FAVOR THE GRANT OF A DEFAULT JUDGMENT ........ 3

A. Defendants' Default Was Willful ........ 3
B. Defendants Have Presented No Meritorious Defense ........ 4
C. Defendants' Inaction Prejudices Plaintiff ........ 4

III. PLAINTIFF'S COMPLAINT ESTABLISHES DEFENDANTS' LIABILITY ........ 4

A. Defendants Are Employers Subject to the FLSA and the NYLL ........ 5
B. Defendants' Wage Payment Violations Under the FLSA and NYLL ........ 7

1. Defendants Violated the Minimum Wage Provisions of the NYLL ........ 7
2. Defendants Violated the Overtime Wage Provisions of the FLSA and NYLL 8
3. Defendants Violated the Spread-of-Hours Provisions of the NYLL ........ 9

C. Defendants' Wage Theft Prevention Act Violations ........ 10
D. Applicable Statutes of Limitations ........ 10

IV. PLAINTIFF IS ENTITLED TO DAMAGES ........ 11

A. Unpaid Minimum Wages Calculation ........ 12

B. Unpaid Overtime Wages Calculation ........ 12

C. Spread-of-Hours Damages ........ 15

D. Wage Theft Prevention Act Claims ........ 16

E. Liquidated Damages ........ 17

F. Interest ........ 18

G. Attorneys' Fees and Costs ........ 19

**CONCLUSION** ........ **20**

## TABLE OF AUTHORITIES

### CASES

*Apolinar v. Glob. Deli & Grocery, Inc.*, No. 12 Civ. 3446 (RJD) (VMS), 2013 WL 5408122 (E.D.N.Y. Sept. 25, 2013) ........................................................................................6

*Augusto Corrales v. AJMM Trucking Corp.*, No. 19 Civ. 4532, 2020 WL 1911189 (S.D.N.Y. Apr. 20, 2020) ........................................................................................19

B*ridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868 (S.D.N.Y. Oct. 27, 2008) ........................................................................................4

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230 (2d Cir. 2012)........................................................................................2

*Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x. 59, 60-61 (2d Cir. 2016).................17

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011)..........................14

*Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 266 (E.D.N.Y. 2019)........................................................................................3

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ....................................................2

*Espinosa v. Perez*, No. 18 Civ. 8855 (LGS) (SN), 2020 WL 2950978, at *5 (S.D.N.Y. Jan. 27, 2020)........................................................................................19

*Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 34–35 (E.D.N.Y. 2015)........................................................................................7, 18

*Galicia v. 63-68 Diner Corp.*, No. 13 Civ. 3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015)........................................................................................5

*Gesualdi v. Dan Yant Inc.*, 6 F. Supp. 3d 264 (E.D.N.Y. 2014) ................................................4

*Giles v. City of New York*, 41 F. Supp. 2d 308 (S.D.N.Y. 1999)...............................................13

*Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76 (E.D.N.Y. 2012) .......................................11

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ...................................................6

*Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493 (S.D.N.Y. June 9, 2016) ........................................................................................14

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013).................................................................5

*Jaramillo v. Banana King Rest. Corp.*, No. 12 Civ. 5649 (NGG)(RML), 2014 WL 2993450 (E.D.N.Y. July 2, 2014) .......... 10

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *1 (E.D.N.Y. Jan. 20, 2010) .......... 19

*Kim v. Superior Cafe Corp.*, No. 21 Civ. 3620 (GBD) (RWL), 2021 WL 5315704 (S.D.N.Y. Oct. 7, 2021) .......... 12, 15

*Leon v. Zita Chen*, No. 16 Civ. 480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) .......... 17

*Lopez v. Royal Thai Plus, LLC*, No. 16 Civ. 4028 (NGG) (SJB), 2018 WL 1770660 (E.D.N.Y. Feb. 6, 2018) .......... 8, 13, 14, 15

*Newman v. W. Bar & Lounge, Inc.*, No. 20 Civ. 1141 (KAM) (RER), 2021 WL 2401176 (E.D.N.Y. June 11, 2021) .......... 13

*Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17 Civ. 7095 (RRM), 2019 WL 4739047 (E.D.N.Y. June 12, 2019) .......... 17

*Perez Garcia v. Hirakegoma Inc.*, No. 17 Civ. 7608 (SLC), 2020 WL 1130765 (S.D.N.Y. Mar. 9, 2020) .......... 9

*Pineda v. Frisolino, Inc.*, No. 15 Civ. 3774 (GBD), 2017 WL 3835882 (S.D.N.Y. Aug. 29, 2017) .......... 18

*Rowe v. CC Rest. & Bakery, Inc.*, No. 17 Civ. 01423 (CBA) (PK), 2019 WL 4395158 (E.D.N.Y. Aug. 15, 2019) .......... 13

*Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) .......... 3, 4, 11, 12

*Santillan v. Henao*, 822 F. Supp. 2d 284 (E.D.N.Y. 2011) .......... 11

*Silva v. Legend Upper W. LLC*, No. 16 Civ. 3552 (PGG), 2021 WL 4197360 (S.D.N.Y. Sept. 14, 2021) .......... 14

*Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105 (2d Cir. 1997) .. 2, 11

*United States v. Myers*, 236 F. Supp. 3d 702 (E.D.N.Y. 2017) .......... 4

**STATUTES**

29 U.S.C. § 201 ........................................ 1

29 U.S.C. § 203 ........................................ 5

29 U.S.C. § 216 ........................................ 17

29 U.S.C. § 255 ........................................ 10

N.Y. Lab. Law § 195 ........................................ 10, 16

N.Y. Lab. Law § 198 ........................................ 16

N.Y. Lab. Law § 652 ........................................ 7

N.Y. Lab. L. § 663 ........................................ 11

**RULES AND REGULATIONS**

Federal Rule of Civil Procedure 55 ........................................ 2

N.Y. C.P.L.R. § 5001 ........................................ 18

N.Y. C.P.L.R. § 5004 ........................................ 18

12 N.Y.C.R.R. § 146-1.2 ........................................ 7, 15

12 N.Y.C.R.R. § 146-1.4 ........................................ 8

12 N.Y.C.R.R. § 146-1.6 ........................................ 9

12 N.Y.C.R.R. § 146-3.5 ........................................ 13

## PRELIMINARY STATEMENT

On October 5, 2021, Plaintiff Cesar Tucubal ("Plaintiff" or "Tucubal") initiated this Action by filing a Complaint against Defendants Ambika Bhavani Inc. d/b/a Supreme Diner ("Supreme Diner") and Daljit K. Sanghu (collectively with Supreme Diner, "Defendants"). Plaintiff seeks to recover unpaid minimum and overtime wages and spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"). To date, Defendants have failed to file an answer to Plaintiff's Complaint or otherwise appear to defend this Action. Because Plaintiff has sufficiently stated claims under the FLSA and the NYLL in his Complaint and submitted sufficient proof of damages in support of his instant Motion for Default Judgment, Plaintiff has established all prerequisites for, and now seeks, a default judgment against Defendants in the amount of $93,940.36,[1] inclusive of attorneys' fees, costs, and pre-judgment interest.

## STATEMENT OF FACTS

Plaintiff, a former delivery worker and dishwasher at Supreme Diner, initiated this Action to recover unpaid minimum and overtime wages and other damages arising from his employment with Defendants by filing a Complaint on October 5, 2021, ECF No. 1.[2] Plaintiff completed service of process on Defendants Ambika Bhavani Inc. and Daljit K. Sanghu ("Sanghu) on November 29, 2021. ECF Nos. 7, 8. Defendants' deadline to answer

---

[1] Plaintiff's calculation of damages is attached as Exhibit D to the Pechman Declaration. Exhibits to the Pechman Declaration are referenced hereafter by the prefix "Ex." and their corresponding letter.

[2] Plaintiff, through is counsel, sent a demand letter to Defendants on July 12, 2021 inviting pre-litigation discussions of Plaintiff's claims. Pechman Decl. at ¶ 2. Although an attorney contacted Plaintiff's counsel in response to the demand letter, pre-litigation efforts to resolve this matter stalled, and Plaintiff filed his Complaint.

or otherwise move in response to Plaintiff's Complaint was December 20, 2021. Defendants failed to file an answer by the deadline or to otherwise appear in this Action. Plaintiff filed a Request for Certificate of Default and an accompanying Affirmation in Support on June 1, 2022, ECF No. 16, and the Clerk of Court entered a Certificate of Default on June 6, 2022, ECF No. 17. Plaintiff now moves for default judgment against Defendants in the amount of $93,940.36.

## ARGUMENT

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a party whose default has been entered by the Clerk of Court under Rule 55(a). Despite the "oft-stated preference" for resolving disputes on the merits, the trial court has "sound discretion" to grant or deny a motion for a default judgment. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). In determining how to exercise that discretion, the court balances the need to expeditiously adjudicate cases against its responsibility to afford litigants an opportunity to be heard. *Id.* at 96.

A defaulting defendant is deemed to have admitted all of the well-pleaded factual allegations in a plaintiff's complaint, except for claims relating to damages. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). To determine what damages should be awarded, the court may conduct an evidentiary hearing or rely upon the plaintiff's documentary submissions. *See* Fed. R. Civ. P. 55(b)(2); *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) ("We have held that, under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'" (quotation omitted)).

## II. The Discretionary Factors Favor the Grant of a Default Judgment

To determine whether to grant a default judgment, the court considers whether: (1) the default was willful; (2) the defaulting party has a meritorious defense to the plaintiff's claims; and (3) denial of the default judgment motion would prejudice the non-defaulting party. *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (Swain, J.) (quotation omitted). Each of these factors weighs in favor of granting Plaintiff's request for default judgment.

### A. Defendants' Default Was Willful

"A default is considered willful where the defendant fails to answer a complaint without explanation or justification." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 266 (E.D.N.Y. 2019) (citations omitted). Here, Defendants have failed to enter an appearance and respond to Plaintiff's Complaint following service of the Summonses and Complaint. Although they have had more than sufficient time—over six months—to defend this lawsuit, Defendants have offered no explanation or justification for their failure to appear and answer Plaintiff's Complaint. Defendants have continued to ignore this litigation despite initially retaining counsel to respond to Plaintiff's pre-litigation demand letter, and despite Plaintiff's numerous additional efforts, through his counsel, to secure Defendants' appearance by advising Defendants and their counsel of Defendants' default. *See* Pechman Decl. at ¶ 8; ECF Nos. 9-11. These circumstances demonstrate Defendants' intent to abandon their defenses against this Action. Accordingly, the Court should find that Defendants' default was willful. *See Santana*, 198 F. Supp. 3d at 291 n.2 (finding that defendants' failure to appear and respond to a complaint and motion for default judgment indicated willful conduct).

### B. Defendants Have Presented No Meritorious Defense

Because they have failed to appear, Defendants have raised no meritorious defense to Plaintiff's claims. Default judgment is favored in circumstances where a defendant's failure to respond to a complaint leaves a court unable to determine whether the defendant may have meritorious defenses. *United States v. Myers*, 236 F. Supp. 3d 702, 707 (E.D.N.Y. 2017); *Santana*, 198 F. Supp. 3d at 291 n.2. This factor therefore weighs in favor of granting the instant Motion.

### C. Defendants' Inaction Prejudices Plaintiff

In the absence of an appearance by Defendants, a denial of Plaintiff's Motion would prejudice Plaintiff because "there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citation omitted). Plaintiff would be left without the opportunity to vindicate his rights and receive just compensation for hours worked. *Santana*, 198 F. Supp. 3d at 291 n.2. Accordingly, all factors favor entry of a default judgment. As explained below, the allegations in the Complaint establish a basis for finding liability and entering a default judgment against Defendants.

## III. Plaintiff's Complaint Establishes Defendants' Liability

In light of Defendants' default, Plaintiff's well-pleaded allegations pertaining to liability must be accepted as true. *Gesauldi v. Dan Yant Inc.*, 6 F. Supp. 3d 264, 269 (E.D.N.Y. 2014) (citation omitted). Plaintiff's Complaint pleads allegations sufficient to establish Defendants' liability on each of his claims.[3]

[3] The Complaint states claims for violations of the minimum wage provisions of the NYLL (First Claim), the overtime wage provisions of the FLSA and NYLL (Second and Third Claims), the spread-of-hours pay provisions of the NYLL (Fourth Claim), and the notice and wage statement provisions of the NYLL, as amended by the Wage Theft Prevention Act ("WTPA") (Fifth and Sixth Claims). Ex. A to Pechman Decl., Complaint ("Compl.") at ¶¶ 24-53.

### A. Defendants Are Employers Subject to the FLSA and the NYLL

An employer is subject to the FLSA if it is an "enterprise engaged in commerce," meaning it:

> (1) "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has annual gross volume of sales made or business done of not less than $500,000.

*Galicia v. 63-68 Diner Corp.*, No. 13 Civ. 3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015) (quoting 29 U.S.C. § 203(s)(1)(A)). Individuals may also be subject to the FLSA if they exercise "operational control" over the employee. *Id; see also Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013). The NYLL is broader than the FLSA, and states that virtually any person or entity "acting as [an] employer," including "any individual . . . [or] corporation," is an employer of a plaintiff-employee. *See, e.g.*, *Galicia*, 2015 WL 1469279, at *3 (citing NYLL § 651(6)).

Defendants employed Tucubal as a delivery worker and dishwasher from approximately July 18, 2020 to May 24, 2021. Compl. ¶ 6; Declaration of Cesar Tucubal ("Tucubal Decl.") at ¶ 2). Supreme Diner is a restaurant located in Queens, New York, offering in-person dining, take-out, and delivery services, and is owned and operated by Defendants. Compl. at ¶¶ 7, 11; Tucubal Decl. at ¶ 2, 4. During his employment, Defendants paid Tucubal in cash on a weekly salary basis. Compl. at ¶ 20-22; Tucubal Decl. at ¶ 3, 14. The Complaint alleges that Supreme Diner: (1) is an "enterprise engaged in interstate commerce" within the meaning of the FLSA; (2) has employees "engaged in commerce or the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (3) had "an annual gross volume of sales in excess of $500,000" at all times relevant to this Action. Compl. at ¶¶ 8-10.

In the default judgment context, Plaintiff's uncontested allegations are sufficient to establish that Supreme Diner is an employer covered by the FLSA and NYLL. *See, e.g.*, *Apolinar v. Glob. Deli & Grocery, Inc.*, No. 12 Civ. 3446 (RJD) (VMS), 2013 WL 5408122, at *5 (E.D.N.Y. Sept. 25, 2013) (uncontested allegations in the plaintiffs' complaint were sufficient to establish that the defendants "were involved in interstate commerce and [] subject to the FLSA" for purposes of default judgment) (citations omitted).

The Complaint also pleads facts sufficient to show that Defendant Daljit K. Sanghu exercised operational control over Plaintiff's employment at Supreme Diner and qualifies as his employer under the statutes. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Apolinar*, 2013 WL 5408122, at *3 (quotation omitted). As alleged in the Complaint and set forth in Tucubal's Declaration, Sanghu: (1) is the owner of Supreme Diner; (2) held and exercised authority over personnel decisions at Supreme Diner, including the authority to hire and fire employees, set employee wage rates, and maintain employee pay records; (3) hired Tucubal, set his wage rates and schedule, and distributed his pay; and (4) was present at Supreme Diner most days of Tucubal's employment and directly supervised his work. Compl. at ¶¶ 11-17; Tucubal Decl. at ¶¶ 4-7.

Sannghu therefore exercised significant operational control over Supreme Diner, including over all aspects of Plaintiff's employment at the restaurant, and is individually liable as an employer for violations of the FLSA. *See, e.g. Santana*, 198 F. Supp. 285 at 292 ("Because [individual defendant] Pimental had the power to hire and fire Santana, affect her terms and conditions of employment, and manage her work activities, he is also an employer of Santana under the FLSA.") (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). These same facts are also sufficient to establish that Sanghu

qualifies as Tucubal's employer under the NYLL. *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 34–35 (E.D.N.Y. 2015) (explaining that "Plaintiffs' burden in establishing that they are 'employees' entitled to NYLL protections is similar to the definition they had to satisfy under the FLSA" but the NYLL "focuses more on 'the degree of control exercised by the purported employer' over the purported employee.'").

**B. Defendants' Wage Payment Violations Under the FLSA and NYLL**

**1. Defendants Violated the Minimum Wage Provisions of the NYLL**

The NYLL ensures payment of a basic minimum wage rate. NYLL § 652 (McKinney 2020); 12 N.Y.C.R.R. § 146-1.2. The statutory minimum wage rate established by the NYLL for employers in Queens, where Supreme Diner is located, was $15.00 per hour in 2020 and 2021. NYLL § 652(a)(i) (McKinney 2020); 12 NYCRR § 146-1.2(a)(1)(ii).

As detailed in the Complaint and Tucubal's Declaration, Defendants assigned Tucubal to work as a delivery person and dishwasher at Supreme Diner from July 18, 2020 through May 24, 2021. Compl. ¶ 6; Tucubal Decl. at ¶ 2. Throughout his employment at Supreme Diner, Tucubal worked eleven-hour shifts, from 9:00 a.m. to 8:00 p.m., six days per week, with a thirty-minute break, totaling approximately sixty-three hours per workweek. Compl. at ¶ 19; Tucubal Decl. at ¶ 8. From the beginning of his employment to approximately September 2020, Defendants paid Tucubal a weekly salary of $395.00. Compl. at ¶ 20; Tucubal Decl. at ¶ 9. From approximately October 2020 through the end of his employment on May 24, 2021, Defendants paid Tucubal a weekly salary of $410.00. Compl. at ¶ 21; Tucubal Decl. at ¶ 10.

Under the New York State Department of Labor's ("NYDOL") Hospitality Industry Wage Order ("HWO"), which applies here because Supreme Diner is a restaurant, *see* 12 N.Y.C.R.R. § 146-3.1, a restaurant employee's regular rate of pay is calculated by "dividing the employee's total weekly earnings, not including exclusions

from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Lopez v. Royal Thai Plus, LLC*, No. 16 Civ. 4028 (NGG) (SJB), 2018 WL 1770660, at *7 (E.D.N.Y. Feb. 6, 2018); 12 N.Y.C.R.R. § 146-3.5. Accordingly, Tucubal's regular rates of pay calculated using the HWO formula were: (1) $9.88 per hour ($395.00 divided by 40), for the period from July 18, 2020 through September 2020; and (2) $10.25 per hour ($410.00 divided by 40) for the period from October 2020 through May 24, 2021. *See* Compl. at ¶¶ 20-21; Ex. D (Damages).

Because Tucubal's regular wage rate fell below the statutory minimum wage rate established by the NYLL during this period, the well-pleaded allegations in Tucubal's Complaint and his supporting Declaration establish that Defendants violated the minimum wage provisions of the NYLL, as stated in Tucubal's First Claim.

#### 2. Defendants Violated the Overtime Wage Provisions of the FLSA and NYLL

Both the FLSA and NYLL require employers to pay their non-exempt employees a premium, 1.5 times the employee's regular rate of pay, for hours worked over forty per workweek. 29 U.S.C. § 207; 12 N.Y.C.R.R. § 146-1.4. As reflected by the well-pleaded factual allegations detailed below, Tucubal regularly worked over forty hours per workweek throughout his employment, but Defendants paid him on a weekly salary basis that failed to provide him with overtime pay for hours worked in excess of forty per workweek.

As described above in Section III(B)(1), Tucubal regularly worked sixty-three hours per workweek throughout his employment. Compl. at ¶ 19; Tucubal Decl. at ¶ 8. Defendants paid Tucubal a weekly salary of $395.00 from July 2020 through September 2020, and a weekly salary of $410.00 from October 2020 through the end of his employment. Compl. at ¶ 20-21; Tucubal Decl. at ¶ 9-10.

In the default judgment context, a plaintiff may demonstrate an employer's liability for failure to pay required overtime wages under the FLSA and NYLL where "[h]e attests that he regularly worked over 40 hours per week for a fixed weekly salary, without an overtime premium for the hours he worked in excess of 40[.]" *Perez Garcia v. Hirakegoma Inc.*, No. 17 Civ. 7608 (SLC), 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020). Because the allegations in Tucubal's Complaint are sufficient to plead that Defendants violated the overtime wage provisions of the FLSA and NYLL by paying him on a weekly salary basis for more than forty hours of work per workweek, Tucubal has established Defendants' liability on his FLSA and NYLL overtime wage claims (Second and Third Claims) for purposes of the instant Motion.

**3. Defendants Violated the Spread-of-Hours Provisions of the NYLL**

The NYDOL's HWO requires employers to pay employees spread-of-hours pay—one additional hour of pay at the basic minimum hourly rate on each day when the interval between the beginning and end of an employee's workday exceeds ten hours. 12 N.Y.C.R.R. § 146-1.6; *Perez Garcia,* 2020 WL 1130765, at *7 ("Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours.")

The well-pleaded allegations establish that Tucubal regularly worked eleven-hour shifts at Supreme Diner from July 2020 through the end of his employment, but was not paid spread-of-hours pay on days when he worked shifts spanning over ten hours. Compl. at ¶¶ 19, 20, 21, 44; Tucubal Decl. at ¶¶ 8, 12. Accordingly, Tucubal's well-pleaded allegations establish Defendants' liability on his spread-of-hours claim (Fourth Claim) for purposes of his instant Motion.

### C. Defendants' Wage Theft Prevention Act Violations

Section 195(1)(a) of the NYLL requires employers to provide all employees with a written notice "at the time of hiring" and containing, *inter alia*, the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, and the name of the employer. NYLL § 195(1)(a); *Jaramillo v. Banana King Rest. Corp.*, No. 12 Civ. 5649 (NGG) (RML), 2014 WL 2993450, at *6 (E.D.N.Y. July 2, 2014). Defendants failed to provide this notice at the time of Tucubal's hiring. Compl. at ¶¶ 23, 52; Tucubal Decl. at ¶ 13. Defendants also unlawfully dispensed with their obligation to provide Tucubal, with each payment of wages, a statement listing "the dates of work covered by that payment of wages, name of employee, name of employer . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." NYLL § 195(3). Defendants did not furnish Tucubal with corresponding wage statements accompanying each payment of wages. Compl. at ¶¶ 23, 48; Tucubal Decl. at ¶¶ 15. Accordingly, the Complaint establishes Defendants' failure to comply with the WTPA's wage notice and statement provisions, as stated in Tucubal's Fifth and Sixth Claims.

### D. Applicable Statutes of Limitations

Claims under the FLSA are subject to a three-year statute of limitations if Defendants' actions were willful. 29 U.S.C. § 255(a). Where, as here, Defendants have defaulted, and the Complaint alleges that Defendants acted willfully, *see* Compl. at ¶¶ 30, 36, 41, 44, Plaintiff is entitled to a finding that Defendants' conduct was willful and application of the FLSA's three-year statute of limitations. *See, e.g., Cabrera v. Canela*, 412 F. Supp. 3d 167, 177 (E.D.N.Y. 2019) ("Plaintiff has pleaded willful violations of the Act . . . and defendants have, by virtue of their default, waived the affirmative defense of statute of limitations.").

A six-year statute of limitations applies to Tucubal's NYLL claims, regardless of willfulness. NYLL § 663(3); *Cabrera*, 412 F. Supp 3d at 177. Because the Complaint was filed on October 5, 2021, Tucubal is entitled to damages dating back to the start of his employment with Supreme Diner on July 18, 2020.

## IV. Plaintiff is Entitled to Damages

The well-pleaded allegations in Plaintiff's Complaint, taken as true, establish Defendants' liability for violations of the FLSA and the NYLL. Once Defendants' liability is established, the Court must determine the appropriate amount of damages. *Santana*, 198 F. Supp. 3d 285, 291; *Apolinar*, 2013 WL 5408122 at *6 ("A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded."). "Where, as here, the defendant has never appeared, 'the Court's determination is based solely on plaintiff[s'] submissions.'" *Gesauldi*, 6 F. Supp. 3d at 269 (quotation omitted).

It is within the Court's discretion whether or not to hold an evidentiary hearing to determine and calculate damages. *Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011) ("In calculating damages, this Court relies on the submissions of plaintiff and has not required a hearing. The Second Circuit has expressly endorsed this approach so long as the court has 'ensured itself that there was a basis for the damages specified in the default judgment.'") (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997)). In cases where "no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) (quotation omitted); *see also Kim v. Superior Cafe Corp.*, No. 21 Civ. 3620 (GBD) (RWL), 2021 WL 5315704, at *4 (S.D.N.Y. Oct.

7, 2021) ("When the employer defaults and records of wages and hours are not provided, the employee may establish his right by relying on his recollection alone and an affidavit setting forth the requisite details about the number of hours worked and pay received is sufficient.").

Tucubal's unrebutted recollections and estimates of hours worked as reflected in his Declaration provide "sufficient evidence to establish damages with respect to Defendants' FLSA and NYLL violations 'with reasonable certainty'" in this case. *Santana*, 198 F. Supp. 3d at 292 (quoting *Transatlantic Marine Claims Agency*, 109 F.3d at 111).

**A. Unpaid Minimum Wages Calculation**

As described above in Section III(B)(1), as a result of Defendants' weekly salary payments to Tucubal, Defendants failed to pay Tucubal the statutory minimum wage rate applicable to employers in New York City for regular hours Tucubal worked throughout his employment. *See also* Tucubal Decl. at ¶¶ 8-9. As reflected in the damage calculations attached as Ex. D to the Pechman Declaration (the "Damage Calculations")**,** Tucubal is therefore owed the difference between the applicable NYLL statutory minimum wage (*i.e.*, $15.00 per hour) and the regular hourly rate Defendants paid Tucubal for regular hours worked**.** Total unpaid minimum wages are $8,585.17.00. *See* Ex. D, Damage Calculations at Column K.

**B. Unpaid Overtime Wages Calculation**

Tucubal has attested that he regularly worked sixty-three hours per workweek at Supreme Diner, and that Defendants paid him on a weekly salary basis throughout his employment. Tucubal Decl. at ¶¶ 8-11. Under the applicable federal regulations, where, as here, an employee is paid on a weekly salary basis, his "regular hourly rate is calculated by 'dividing the salary by the number of hours which the salary is intended to compensate.'" *Newman v. W. Bar & Lounge, Inc.*, No. 20 Civ. 1141 (KAM) (RER), 2021 WL

2401176, at *10 (E.D.N.Y. June 11, 2021) (quoting 29 C.F.R. § 778.113 (2016)). "[T]here is a 'rebuttable assumption that a weekly salary covers 40 hours.'" *Id.* (quoting *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)). In order to rebut the presumption, an employer must show the existence of "an employer-employee agreement that the salary cover a different number of hours." *Id.* (quoting *Giles*, 41 F. Supp. 2d at 317).

Under the NYDOL's HWO, a restaurant employee's regular rate of pay is calculated by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Lopez v. Royal Thai Plus, LLC,* No. 16 Civ. 4028 (NGG) (SJB), 2018 WL 1770660, at *7 (E.D.N.Y. Feb. 6, 2018); 12 N.Y.C.R.R. § 146-3.5

Having failed to appear, Defendants have not rebutted the presumption under the FLSA that Tucubal's weekly salary was intended to compensate him for only the first forty hours he worked per workweek. Further, because no such presumption exists under the HWO, Tucubal's regular wage rate is appropriately calculated by dividing his weekly salary by forty. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17 Civ. 01423 (CBA) (PK), 2019 WL 4395158, at *8 (E.D.N.Y. Aug. 15, 2019) ("Unlike the FLSA and those NYLL provisions covering the non-hospitality industry, the Hospitality Order contains no mechanism for rebutting the calculation based on a maximum 40-hour work week with evidence that the employee had an agreement with the employer to work more than 40 hours a week.").

The applicable regular hourly wage rates per period, calculated by dividing Tucubal's weekly salary of $395.00 and later $410.00, *see* Tucubal Decl. at ¶ 8, by forty, are reflected in Column F of the Damage Calculations. Ex. D, Damage Calculations; *see also* Section III(B)(1) *supra*. Tucubal was entitled to receive overtime compensation equivalent to at least 1.5 times his regular hourly rate for each hour over forty he worked

per workweek under the FLSA and NYLL. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. However, the "regular rate of pay at which the employee is employed may in no event be less than the statutory minimum." *Silva v. Legend Upper W. LLC*, No. 16 Civ. 3552 (PGG), 2021 WL 4197360, at *10 (S.D.N.Y. Sept. 14, 2021) (quoting 29 C.F.R. 778.107). Further, where "a higher minimum wage than that set in the [FLSA] is applicable to an employee by virtue of ... other legislation, the regular rate of the employee ... cannot be lower than such applicable minimum[.]" *Id.* at * 10 (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011).

Here, because Defendants paid Tucubal a regular rate that fell below the NYLL statutory minimum wage rate throughout his employment, the appropriate regular rate for use in calculating overtime pay due is the applicable $15.00 per hour statutory minimum wage rate that Defendants were required to pay Tucubal. *See id.* (holding that where employees were paid below the NYLL minimum wage rate, "the 'regular rate' applied, and from which the overtime rate is calculated, is the highest applicable statutory minimum wage. In this case, the highest applicable statutory minimum wage is the New York minimum wage."); *see also Hernandez v. Jrpac Inc*., No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *32 (S.D.N.Y. June 9, 2016) (observing that where delivery workers' regular rates of pay fell below the minimum wage rate, "the delivery workers' regular rate of pay for the purposes of calculating the overtime pay they are due is the statutory minimum wage under both the FLSA and NYLL") (citations omitted).

Because Tucubal's weekly salary did not compensate him for overtime hours worked, he is owed the full overtime premium calculated based on the applicable NYLL statutory minimum wage rate (*i.e.*, $22.50 per hour, equivalent to $15.00 multiplied by 1.5) for all hours worked in excess of forty per workweek, as reflected in Column L of the Damage Calculations. *See, e.g., Lopez*, 2018 WL 1770660, at *7 ("New York's hospitality

industry regulations determine hourly wage rate by dividing weekly wages by the lesser of 40 or actual hours worked; the assumption embedded in such a calculation is that, unless evidence suggests otherwise, none of the paid wages are to be credited to overtime. Or put differently, for Plaintiff under NYLL, the $700 he was paid was for the first 40 hours he worked; for the additional 39 overtime hours he worked, he received nothing.")

Accordingly, as reflected in the Damage Calculations, Tucubal's overtime wage damages are $22,770.00. *See* Ex. D, Damage Calculations at Column L.[4]

**C. Spread-of-Hours Damages**

"Spread of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours." *Lopez*, 2018 WL 1770660, at *10. The minimum wage rate applicable to employers located in New York City, such as Supreme Diner, was $15.00 per hour throughout Tucubal's employment. NYLL § 652(1)(b) (McKinney 2020); 12 NYCRR § 146-1.2(a)(1)(ii). As discussed in Section III(B)(3) above, Tucubal has attested that he regularly worked eleven-hour shifts six days per week at Supreme Diner, but was not paid spread-of-hours pay on days when he worked these shifts spanning over ten hours. Tucubal Decl. at ¶¶ 8, 12.

Tucubal's spread-of-hours shifts worked are reflected in Column J of the Damage Calculations. Spread-of-hours damages due, calculated by multiplying spread-of-hours shifts worked by the applicable statutory minimum wage rate, are reflected in Column

[4] Plaintiff notes that he is not seeking recovery under *both* the FLSA and NYLL on his overtime wage claims. *See Kim*, 2021 WL 5315704, at *6 ("Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief.") (internal quotation and quotation marks omitted). To the extent there is any question that the forty-hour presumption should be applied under the FLSA, the Court should apply the forty-hour presumption under the NYLL because the NYLL provides Plaintiff with the greatest relief.

M of the Damage Calculations. *See* Ex. D, Damage Calculations. Tucubal's total spread-of-hours damages are $4,005.00. *Id.*

### D. Wage Theft Prevention Act Claims

The Wage Theft Prevention Act ("WTPA"), as amended effective February 25, 2015, requires that at the time of hiring employers provide a written notice containing (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary. NYLL § 195(1)(a) (McKinney 2020). Employers must provide this notice "in English and in the language identified by each employee as the primary language of such employee." *Id.* The WTPA establishes that an employee may recover $50.00 per workday, with a cap of $5,000.00, for violations occurring after February 27, 2015. NYLL § 198(1)(b) (McKinney 2020).

Since April 9, 2011, the NYLL has required that employers "furnish each employee with a statement with every payment of wages, listing the following information: (1) the dates of work covered by that payment of wages; (2) the employee's name; (3) the employer's name, address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6) deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages." NYLL § 195(3) (McKinney 2020). As of February 27, 2015, an employee is entitled to recover $250.00 in damages per workday with a cap of $5,000.00 based on an employer's wage statement violations. NYLL § 198(1–d) (McKinney 2020).

Tucubal has attested that he never received a wage notice and did not receive wage statements with each payment of wages throughout his employment with Defendants. Tucubal Decl. at ¶¶ 13, 15. Based on his total workdays (267), Plaintiff is entitled to recover the statutory maximum $5,000.00 on each of the wage notice and wage statement claims, for a total of $10,000.00 in WTPA statutory damages. *See* Ex. D, Damage Calculations.

**E. Liquidated Damages**

Both the FLSA and NYLL provide for an award of liquidated damages to an employee in the amount of 100% of unpaid wages due, unless the employer shows a good faith basis for its wage payment violations. *See, e.g., Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17 Civ. 7095 (RRM), 2019 WL 4739047, at *10 (E.D.N.Y. June 12, 2019) (citations omitted); 29 U.S.C. § 216(b); NYLL § 663(1). Where, as here, "defendants have defaulted, they have not established good faith to rebut the liquidated damages presumption." *Cabrera*, 412 F. Supp. 3d at 184; *see also Ortiz*, 2019 WL 4739047, at *10 ("As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief.").

A plaintiff may not, however, recover liquidated damages under both the FLSA and the NYLL. *See Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x. 59, 60-61 (2d Cir. 2016). Instead, "[c]ourts should award damages under the statute that provides for the greater recovery." *Leon v. Zita Chen*, No. 16 Civ. 480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (citation omitted). Accordingly, Plaintiff requests that the Court award liquidated damages under the NYLL, as it is the higher of the two liquidated

damage awards.[5] As reflected in the Damage Calculations, Tucubal is entitled to $35,360.17 in liquidated damages. *See* Ex. D, Damage Calculations at Column O.

**F. Interest**

Tucubal is entitled to prejudgment interest on damages arising from Defendants' NYLL wage payment violations (*i.e.*, his minimum wage, overtime wage, and spread-of-hours damages). N.Y. C.P.L.R. § 5001(a); NYLL § 663(1). Prejudgment interest and liquidated damages under the NYLL are not functional equivalents and both may be awarded for violations of the NYLL. *Fermin*, 93 F. Supp. 3d 19 at 48 ("[T]he NYLL permits the award of both liquidated damages and pre-judgment interest.") (citation omitted).

New York law sets the statutory interest rate at nine percent per annum. *Fermin*, 93 F. Supp. 3d at 48.; N.Y. C.P.L.R. § 5004. When a plaintiff has incurred damages at various times, prejudgment interest "shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Prejudgment interest is "calculated from the midpoint of [the employee's] employment to the date of entry of judgment at an interest rate of nine percent per year." *Pineda v. Frisolino, Inc.*, No. 15 Civ. 3774 (GBD), 2017 WL 3835882, at *13 (S.D.N.Y. Aug. 29, 2017). Using the reasonable intermediate date method per employment period, Plaintiff's prejudgment interest was calculated as $4,717.52 as of June 17, 2022. *See* Ex. D, Damage Calculations.

Tucubal is also entitled to post-judgment interest should any sums be awarded by the Court, beginning on the date judgment is entered, at the rate prescribed by 28 U.S.C. § 1961. *See Fermin*, 93 F. Supp. 3d at 23 (awarding post-judgment interest in FLSA case).

---

[5] The Damage Calculations reflect only liquidated damages due under the NYLL, and incorporate liquidated damages for unpaid minimum, overtime, and spread-of-hours pay.

### G. Attorneys' Fees and Costs

The FLSA and the NYLL provide for recovery of reasonable attorneys' fees and costs by successful plaintiffs. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1–a), (1–d), 663 (McKinney 2020). The FLSA and NYLL are remedial statutes designed to protect low-wage workers. "Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk," like the risk presented here of collecting against an absent defendant. *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010).

Commensurate with counsel's experience and the regular hourly rates that PLG charges its hourly-paying clients, Plaintiff requests attorneys' fees at the following rates for the attorneys involved in this litigation: $600.00 for Louis Pechman; $325.00 for Galen Baynes; $400.00 for Laura Rodriguez; and $225.00 for Mirian Albert. The professionals' biographies, outlining their extensive experience in wage-and-hour litigation, are set forth in the Pechman Declaration. *See* Pechman Decl. at ¶¶ 22-36. Counsel expended a reasonable amount of time in the litigation.

For all of the reasons set forth in the Pechman Decl. at ¶¶ 22-42, the hourly rates requested are reasonable. PLG's attorneys should be at the top end of the range of fees awarded in wage-and-hour cases. Magistrate Judge Netburn recently determined that Louis Pechman's hourly rate of $600.00 is reasonable "[g]iven his decades of experience[.]" *Espinosa v. Perez*, No. 18 Civ. 8855 (LGS) (SN), 2020 WL 2950978, at *5 (S.D.N.Y. Jan. 27, 2020). Judge Liman also recently awarded Louis Pechman's $600 hourly rate as reasonable in an FLSA default judgment. *See Augusto Corrales v. AJMM Trucking Corp.*, No. 19 Civ. 4532, 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020).

Accordingly, for the reasons stated here and in the Pechman Declaration, Plaintiff's counsel request $7,972.50 in attorneys' fees. Tucubal also requests $530.00 in costs. *See* Pechman Decl. at ¶ 43; Exs. E-F. PLG paid these costs on behalf of Tucubal pursuant to the terms of the retainer agreement. All costs were reasonably and necessarily incurred and are readily identifiable. The costs consist of the $402.00 EDNY filing fee and $128.00 for service of the Summonses and Complaint on Defendants. *See* Ex. F.

**CONCLUSION**

For the foregoing reasons, Tucubal respectfully requests that the Court issue a default judgment in his favor and against Defendants in the amount of $93,940.36, plus post-judgment interest. A proposed order is attached to the Pechman Declaration as Exhibit H.

Dated: New York, New York
June 17, 2022

PECHMAN LAW GROUP PLLC

By: ______________________

Louis Pechman
Galen C. Baynes
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
baynes@pechmanlaw.com
*Attorneys for Plaintiff*